And we're going to move to the third one. Town Kitchen versus Certain Underwriters at Lloyd's. Mr. Mazur. Good morning, your honors, and happy birthday, Judge. May it please the court, my name is Jason Mazur, I represent the appellant, Town Kitchen. So the court asked me to be prepared to discuss the decision in S.A. Palm Beach that came out a week or so ago. I want to discuss it and I want to discuss it. There's also a Florida DCA opinion now. Yes, sir, the third DCA case in Green Streets. That quotes the district court in this case and says it's right. We have to follow what the Florida courts tell us Florida law is. You may think that we've gotten it wrong and that the Florida DCA has gotten it wrong, but I'm not sure that this panel can do anything about it. Okay, so let me begin by reminding the court what it said in S.A. The court's job is to predict what the Florida Supreme Court would do. True. Intermediate appellate court decisions can be persuasive, but ultimately the eerie guess Well, and the eerie guess has been made by our panel. The eerie guess has been made on facts, or I should say, allegations that are different and distinct, which is why I think I am standing here today as two other of my colleagues. There are oral arguments that were canceled and S.A. Palm Beach . . . Oh, no. I just thought it would be more efficient to do it that way. I appreciate that. Instead of having a supplemental briefing, I figured we'd just talk about it today and get it done. So let me tell you first why Town Kitchen's case is demonstrably different than S.A. Palm Beach or the Green Streets case, and that is because of the allegations in the complaint. In S.A. Palm Beach, Judge Jordan was very careful in how he described what was being ruled on. He said that in that decision, he expressly limits the decision to the, quote, allegations of the complaints before us. That was at page 23. And if you remember, there were four complaints that were consolidated in that case. The main import and the main distinction is none of those cases pleaded viral infestation of the air, viral contamination of the air within the business. And the 11th Circuit panel's decision in S.A. Palm Beach drew a lot on that. In fact, Rococo's steak was distinguished at page 33 because they had argued that in their brief, but it was nowhere found in their complaint. Town Kitchen is not the same. We expressly pleaded that COVID-19 or the virus causing COVID-19 infiltrated and poisoned the air in our restaurant. And that factually, or at least the allegations, is what is different from each of the property here is the air property includes the air, be it air within a restaurant. Yes, sir. Your honor. And that has been proved by state Supreme Courts and circuit courts of appeal around this nation involving just like COVID-19 gas fumes, ammonia spills, asbestos. And this gets us to the point where we really got to tackle, look, you have to be masters of. You can clean the air, right? I mean, indisputably, you can go in and fumigate and, and, and you're back in business. Well, the science is we do this all the time, but with our court, the science is actually not so clear on that. And we, we attached a study about hospital cleanings, but that's not the point judge. Whenever you use your business, which is a dine in restaurant during a pandemic, you reintroduce the virus into the air. As even judge Moreno said in the district court, if you stood there with a rag and Lysol all day long, you're not going to be able to, but it's not your position that any of your physical property was materially altered. Of course it, of course it was every time because the air, well, you have to breathe the air. I'm talking about physical property, not the air. So I understand the court's question. The distinction is I disagree that the air within the business is not physical property, but we all know that when COVID or the virus is introduced into the, the building, it falls on services. We, we all know that SA Palm Beach doesn't mean that it can't be cleaned or that it has physically altered. Well, let's, let's talk about damage the property. Let's talk about that because it comes from two sources. SA Palm Beach relied on two sources. It relied on the unpublished 11th circuit decision in Mama Joe's, which held that a substance that merely needs to be clean has not been physically damaged or physically lost. Now that may make perfect sense, your honor, in the context of dust. It makes no sense and it is, it is wrong when it is applied to dangerous, published opinion of this court has applied it to. I am, I am, I am doing my best as a insurance coverage practitioner for, I can't believe I'm going to say this out loud, but nearly a quarter of a century. Every day you have to be new subject matter, uh, masters. This is my only one. So I'm going to try. Yeah. Let, let me ask you, let me ask you a question about this. So if we were to rule in your favor here, you go down to the district court and you go through discovery and you get to summary judgment and your burden of proof at summary judgment would be what? Our burden of proof and summary judgment, depending exactly how this opinion comes out would be to demonstrate the presence or statistically certain presence during a pandemic of virus on our property that made it unsafe for human occupancy or at the very least less useful because this is a commercial property policy with business interruption coverage. That is what it is designed to protect. So let's go to the two bases. We've got this mama Joe's thing, dust. I can live with that. Fumes, radon, we can go on and on. Ammonia. The case law is very clear around the country that when a substance enters your property that makes it dangerous to be in it, you physically damaged, you've tangibly damaged. I don't care which words you want to use, the tangible damage test comes from couch third. Here's the problem with couch third that in SA Palm Beach the panel said was the majority view. It is not. It never has been. It's not helpful to tell us that our prior panel precedent is wrong. Well, again, judge, I'm doing my best to help make sure that we get this right because it's that important. I'm not saying it's wrong. I'm saying the contention that couch third represented the majority view is demonstrably wrong and I'll tell you why. If you look at, and we submitted this as supplemental authority, Rich Lewis's article, tangible alteration couch thirds, tangible alteration fallacy, it tracks since the 1950s every physical loss or damage case. The tangible structural alteration standard was never the majority view. Never. The, all of the cases that I'm telling you about that involve harmful substances on property, I mean, Colorado Supreme Court and First Presbyterian. I've looked at, had to look at this since I was on that earlier panel. Every reported decision of every appellate court of which I'm aware has rejected these arguments in this context. Okay, so let's talk about the judicial scoreboard in the federal courts. I'm not talking about trial courts. Don't talk about trial courts.  So far you are correct, right? Okay. And, but let me say this, the industry is a, is a professional litigant. They get to choose the cases that you get to see first because the cases they don't want you to see, they file answers. The cases they do want you to see, they move to dismiss. All of the early cases, just like SA Palm Beach, that case, the actual SA Palm Beach case, they had a virus exclusion in their policy. They pled government orders as the proximate cause of their loss because just like in 82% of the commercial property policies sold in the United States, they had a virus exclusion. Town Kitchen is one of those 18% that does not. That's why you saw those cases first. And if you look at the appellate decisions from the other circuits, they almost all, all open. They don't control. Of course they don't control. The order of our calendar. I promise you they don't. They can marginally affect it. There's so many things that can affect that. My point only being they hold open in their holdings. This is not a virus on the premises case where there was infiltration into the air. If you look at the third district's, third DCA's decision in Green Streets, if you look at it, it holds only, and this is why it is not binding on this court, it holds only that loss of use alone without tangible alteration of the property is not sufficient. And what does the third DCA do in footnote three when it ends the opinion? It says, it acknowledges that virus particles can result in tangible alteration. They, that case, unlike town, did not plead the poisonous air. That is what makes town's case different. Your honor. Poisonous air. All right. I understand your argument. You've saved five minutes for rebuttal. Let's hear from Mr. Mullen. Thank you. Your honor. Good morning, and may it please the court. Judge Pryor, you sort of stole my thunder in terms of addressing the fact that, yes, the Commodore case or Green Street was decided since this court issued its Essay Palm decision. There have also been two additional panels of this circuit that have issued per curiam affirmed opinions which cite to Essay Palm Beach. Those were the Cafe International case . . . They're unpublished. Unpublished. That's right. Per curiam opinions. Geo Pizzeria was the other one. But, your honor, the Commodore case is key. As you know, when this panel, or when the Eleventh Circuit heard the Essay Palm case, there had been no Florida appellate court ruling. And we were anticipating and looking for when we would see the first one. The Commodore case or Green Street was the first one issued on May 11th. And your honor, that case is very consistent with and similar to the Essay Palm decision. It quotes the district court here, right? That's right, your honor. It quotes Essay Palm. And that's no surprise. To talk about the scorecard very briefly, there are now more than 40 circuit, federal circuit court opinions on this issue, an interpretation of this language, the direct physical loss . . . Can you talk about why he says this case, though, is materially different? It's not materially different. In fact, the amended complaint in this case was filed after the Commodore complaint was filed and is very similar to the Commodore complaint. The plaintiff is trying to make . . . the uphill battle argument they're trying to make because they know it's an uphill battle, but it's not substantially different, your honor, at all. Materially. It's not materially different, your honor. The fact is, the plain language of the policy, you're seeing such consistent rulings because the plain language of the policy here is clear. The language of the policy simply reads that there is coverage. We will pay for actual loss of business income you sustain due to the necessary suspension of your operations during a period of restoration. Then it says that the suspension must be caused by direct physical loss of or damage to property at premises which are described in the declaration. Counsel. The air has been poisoned. Air is not property, your honor. These are commercial property policies. A key factor here is these are not property policies that cover any type of economic loss that can happen at a restaurant. Counsel, I'm sorry to interrupt, but I do want to ask you just for your response to what I am understanding your friend's exact argument to be, and that is sort of twofold. One is, this is different from S.A. Palm because in S.A. Palm, there was no allegation that was pled that the virus was actually on the premises. That's the first thing, okay? And the second thing is, assuming that that is in fact a distinguishing basis, that that brings us within the realm of the cases where radon, asbestos, fumes, et cetera, which you make a change in the actual physical properties of the property, were still considered to be covered. So, if you could maybe just address those two points. Certainly, Judge Rosenbaum, because the distinction that there's been an effort to make here is not a distinction that makes a difference. In fact, many of those cases that I referred to, many of the appellate court opinions and circuit court opinions deal with complaints in which they have alleged or plaintiffs have alleged that radon was the presence of the property. It has been immaterial to the ruling here, because again- I'm sorry, just to be clear though, he's distinguishing it from S.A. Palm, so he's saying we're not bound anymore by S.A. Palm because S.A. Palm did not involve this specific type of allegation. In the Commodore case, it did involve a very similar allegation. In Commodore, they acknowledge, well, there's no test for whether the virus is present on the property, but they allege that it was a virtual certainty or a statistical certainty that the virus was probably present on the property. And that's the allegation here, was that the presence was presumed, that physical loss or damage must be presumed because it's, quote, statistically certain that it's in or on the property. That's right. And there have been several, many, many other cases. It's not a unique type of allegation. These cases, sometimes the plaintiffs plead its presence, sometimes they don't. It's immaterial to the ruling because, again, even if the virus is present, that's not, and the courts have consistently ruled, that doesn't cause the tangible, actual, physical alteration to property. Let me just ask you, out of curiosity, why is this different from radon or asbestos or fumes? Sure. And a similar example could be, here's the distinction, Judge Rosenbaum. And that is, what the plaintiffs try to argue in that type of case is, there's some physical element or cause that's present. Well, think of the Mama Jo's case. There was a physical thing there. It was actual debris was present, whether it's radon or something else. There's always a physical element, but that's not the issue. The issue is, is there a physical loss or physical damage? Is there impact, that tangible alteration? And here, the courts are consistent. A virus does not cause a tangible alteration. It's not a physical, actual, tangible. It can be cleaned with a rag. It can be, in the case of Mama Jo's, it was debris that could be cleaned, could be removed from the property. That's the difference, Your Honor. When we talk about physical loss or damage, it's tangible alteration of the property, of the premises. It's not the fact that there's some physical element. I'm sorry. The difference is that it requires some kind of special equipment, like for radon or asbestos, special hazard suits and equipment to remove. Is that how you're drawing the distinction? No, that's not the distinction. Again, part of this points to the period of restoration language, okay? Because all of this has to do with, if there's suspension of operations caused by a physical damage, these policies talk about, we covered the business income loss during the period of restoration, and that talks about rebuilding, repairing, or replacing. That might make sense from the standpoint of asbestos, where you must physically remove it, or radon, maybe where you have to physically remove something or put some kind of barriers up. In the circumstances of fumes, let's say that there's a gas leak across the street or something and the place has to be evacuated. Why would that be? How would that be different? Again, I think we're mixing apples and oranges, and many of those radon and asbestos cases, there's exclusions in the policy that relate to that, and some of the cases address that issue. But again, if there's damage to other property, and that can be an issue in these cases, right? Because the policy also covers extra expense losses if there's damage to other property that causes your closure. For example, you have a restaurant in a strip mall, and the restaurant next door has a fire that has caused fumes to come over and that kind of thing. If you have to suspend your operations, that's likely covered, and why, Your Honor? Because the policy says if it causes physical damage or direct physical loss or damage to a neighboring property or to another property, that impacts yours. That's the distinction, Your Honor. Thank you. And that's why there's coverage in those instances. So again, there's nothing unique about this case. The Southern District of Florida Court, Judge Moreno, his ruling has been cited by many of the cases at the federal level and the state court level. This is not . . . there's nothing new or unusual about this case that stands out. And fortunately, we are seeing harmony among the courts, as there should be, because again, if you turn right back to the plain reading of the policy, the language here is not complicated. It's not so unsophisticated or require extreme textual interpretation. In fact, the argument that the plaintiffs make here requires some creative textual reading. That's not what should be done in this case. The law is clear from Maspons and Azalea and the other Florida court opinions that this court is aware of, and now finally we have a Florida appellate court opinion in Commodore. All are consistent that this requires actual, tangible alteration to the property to have coverage under the language of this policy. And so we would ask this court to affirm the dismissal of the district court below. Unless there are . . . I'm happy to take further questions, otherwise I'll yield back my time. Thank you. Mr. Mazur, you've saved five minutes. Thank you, Your Honor. Judge Rosenbaum, your questions are prescient, because this is where S.A. Palm Beach can serve the law very, very unwell. In answer to Chief Judge Pryor's questions, no, at paragraph 43, we expressly plead virus on the premises. The statistical certainty part is for the reintroduction. When somebody comes into your restaurant, when it's being used in its intended fashion, it is statistically certain during a pandemic. But just presence isn't enough. Well, here's where we're going, because my colleague brought up the period of restoration. Yes, the period of restoration is a durational element. It has nothing to do with the trigger of coverage. The period of restoration has the word repair in it. Repair is defined as to restore to a sound or healthy state. Period of restoration, restore. What did restaurants like Elm do . . . It still requires a direct physical loss or damage to . . . So, Your Honor, direct physical loss of or damage to has been litigated all across this country. It has . . . There is no unanimity pre-COVID about it. And that's why my colleague couldn't answer the direct question about why virus is different. It's not. It's the same as any other harmful substance that is being introduced into a property, whether it's carbon monoxide, whether it's noxious fumes. You probably remember Chinese drywall. The issue in Chinese drywall was noxious fumes coming out of the drywall. That was the physical loss of or damage to property. It is no different that this is a harmful virus. And the third DCA said it in a footnote. We're not saying that a virus can't cause physical impairment. You need to have a physical harm to your property. It's got to be from a physical cause. The virus is that physical cause. It made it unsafe to be in the building, just like all of those other things that the courts have held to be physical loss of or damage to property. Remember, Florida Supreme Court has been very clear when you are interpreting an insurance policy. The policyholder need only articulate a reasonable interpretation of that language. If it does so, that is the interpretation that must control. That is the Rudderman decision and the FIAD decision. And those were much more finer points. The fact that Judge Hansman below in the third DCA case, the Green Street case, he said it straight out. He said if an insurance company wanted to argue tangible impairment, structural alteration, it should have said so directly. It did not. So the reasonable interpretation of physical loss of or damage to, those have to be separate things according to the 11th Circuit. It's alternatives. A reasonable interpretation is if a physical force acts on your property, rendering it either unsafe for humans to be in there or less useful or unuseful to the policyholder for its insured purpose. Town is a dine-in restaurant and bar. It is only now back in operations because it got the extra expense. It didn't get it, but it incurred the extra expense. It put up barriers. You've seen it. If you go into a bar, the bartender's behind the bar, there's a big plastic barrier, why? So the virus can't get through and infect the person on the other side. Six feet tables, okay? Vaccine requirements, these were all extra expenses that the restaurant industry had to endure in order to resume operations. And this policy has an extended period of indemnity. It says, even when you resume operations, we'll give you an extra 60 days of coverage until your revenue gets up to what it was pre-loss. The loss here was a pandemic. Every time somebody's going to walk into that restaurant, statistically speaking, there will be more COVID in that restaurant. There is no intellectually sound basis to distinguish COVID-19 or a virus in the restaurant from carbon monoxide, gas fumes, none of those things cause structural damage. All of them can be cleaned, all of them, and all of them have been held to cause physical loss or damage to property. I want this court and ultimately the Florida Supreme Court to get this issue right because it is not just COVID this affects, that SA Palm Beach decision if taken literally can wipe out 50 years of coverage that has been held by the appellate courts across this land. So absent a reversal, Chief Judge, if I may, absent a reversal, this court should, according to its own precedent, certify this question to the Florida Supreme Court because this is a state law insurance issue upon which it should have the last say. And I thank you so much.